1

2

3

4

5

6                  UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF WASHINGTON COUNTY

7   RUSSELL DUANE McNEIL,                )
8                          Petitioner,   )   NO.  CV-13-3065-CI
                                         )
9             vs.                        )   MOTION TO STAY AND ABATE
                                         )
10  MAGGIE MILLER-STOUT,                 )
11                         Respondent.   )
                                         )
12  _____ )

13                          **MOTION**

14      Petitioner  Russell  Duane  McNeil,  through  his  attorney

15  Lenell  Nussbaum,  moves  this  Court  for  an  order  staying  the

16  consideration of his habeas petition pending the disposition in

17  Washington  State  courts  of  his  personal  restraint  petition

18  (PRP) raising a claim under *Miller v. Alabama*, 132 S. Ct. 2455,

19  183 L. Ed. 2d 407 (2012).

20              **FACTS RELEVANT TO MOTION**

21      Mr. McNeil, a Washington State prisoner, filed on June 25,

22  2013, a petition under 28 U.S.C. § 2254.  Mr. McNeil, who was

23  17 at the time of the murders leading to his imprisonment, is

24  serving a mandatory sentence of life without the possibility of

25  parole (LWOP) for aggravated first degree murder.   Both the

26

MOTION TO STAY AND ABATE - 1

Washington State courts and the Ninth Circuit previously rejected arguments that mandatory LWOP sentences imposed for acts committed as juveniles violated the 8th Amendment. *In re Boot (State v. Cornejo)*, 130 Wn.2d 553, 925 P.2d 964 (1996); *State v. Massey*, 60 Wn. App. 131, 803 P.2d 340 (1990), *review denied*, 115 Wn.2d 1021, 802 P.2d 126 (1990), *cert. denied*, 499 U.S. 960 (1991); *State v. Stevenson*, 55 Wn. App. 725, 737-38, 780 P.2d 873 (1989), *review denied*, 113 Wn.2d 1040, 785 P.2d 827 (1990); *Harris v. Wright*, 93 F.3d 581 (9th Cir. 1996).

On June 25, 2012, the United States Supreme Court issued the decision in *Miller v. Alabama*, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), for the first time holding that the mandatory imposition of an LWOP sentence for a murder committed as a juvenile violates the Eighth and Fourteenth Amendments. On July 23, 2012, Mr. McNeil filed a PRP in the Washington Supreme Court, case number 87654-1, challenging his sentence. On June 4, 2013, the Washington Supreme Court ordered that his PRP be set for oral argument and counsel be appointed. Argument has not yet been scheduled, but is to be set during the fall of 2013.

**ARGUMENT**

A.   THE STAY AND ABATE PROCEDURE IS APPROPRIATE IN THIS CASE.

As noted in his § 2254 petition, Mr. McNeil maintains his petition is timely under 28 U.S.C. § 2244(d)(1)(C), which

MOTION TO STAY AND ABATE - 2

permits a petition to be filed within one year of

> the date on which the constitutional right asserted
> was initially recognized by the Supreme Court, if
> the right has been newly recognized by the Supreme
> Court and made retroactively applicable to cases on
> collateral review.

Under this provision, the time limit runs from the date the right was recognized, rather than from the date that it is found to apply retroactively. *Dodd v. United States*, 545 U.S. 353 (2005). *Miller* newly recognized the right to an individualized consideration of a sentence less than LWOP for a murder committed when the defendant was under 18. As discussed below, *Miller* should apply retroactively and several courts have so held. This Court is free to determine whether *Miller* applies retroactively.[1] *See, e.g., Howard v. United States*, 374 F.3d 1068 (government concedes that circuit court is free to decide whether *Alabama v. Shelton*, 535 U.S. 654 (2002) applies retroactively; Court rules that it does and therefore finds petition timely); *Breese v. Maloney*, 322 F. Supp. 2d 109, 114 (D. Mass. 2004) (for purposes of (d)(1)(C) "a district court has the authority to decide whether a Supreme Court case should apply retroactively on collateral review");

---

[1]    The same is *not* true under 28 U.S.C. § 2244(b)(2)(A) which expressly requires a finding of retroactivity by the U.S. Supreme Court as a gateway to a successive petition. Because of the difference in language between the two statutes, "every Circuit to have addressed the issue" has assumed that there is no such limitation under § 2244(d)(1)(C). *Dodd* at 365, n.4 (Stevens, J., dissenting).

LENELL NUSSBAUM
ATTORNEY AT LAW
2003 WESTERN AVENUE, SUITE 330
SEATTLE, WASHINGTON 98121
(206) 728-0996

*Stayton v. United States*, 766 F. Supp. 2d 1260, 1265-66 (M.D. Alabama, 2011) (finding *Skilling v. United States*, 130 S. Ct. 2896 (2010) to apply retroactively, and therefore concluding that motion is timely).[2]

28 U.S.C. § 2254(b)(1) prevents relief "unless it appears that (A) the applicant has exhausted the remedies available in the court of the State." "The Supreme Court adopted a rule of 'total exhaustion,' requiring that all claims in a habeas petition be exhausted before a federal court can act on the petition." *Jackson v. Roe*, 425 F.3d 654, 658 (9th Cir. 2005), citing *Rose v. Lundy*, 455 U.S. 509, 522 (1982). Arguably, Mr. McNeil's claim is not yet fully exhausted. It certainly would be preferable to obtain a ruling from the Washington Supreme Court before proceeding to federal habeas.

It may appear unnecessary to file a federal petition at this time because a "properly filed" state postconviction petition tolls the federal statute of limitations. *See* 28 U.S.C. § 2244(d)(2). Because Mr. McNeil filed his PRP last July, he should have about eleven months to file a habeas petition if and when his PRP is ultimately denied.

---

[2]    Some of these cases involve motions under 28 U.S.C. § 2255 rather than under § 2254. The relevant language of the time limit is identical, however, and it does not appear that any court has found that the corresponding provisions should be construed differently. *Compare* 28 U.S.C. § 2255(f)(3) and 28 U.S.C. § 2244(d)(1)(C).

MOTION TO STAY AND ABATE - 4

LENELL NUSSBAUM
ATTORNEY AT LAW
2003 WESTERN AVENUE, SUITE 330
SEATTLE, WASHINGTON 98121
(206) 728-0996

Unfortunately, he cannot count on his PRP being considered "properly filed." In *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), the U.S. Supreme Court held that a postconviction petition is not properly filed if the state courts ultimately determine it to be untimely, even if the petitioner relied on an arguable exception to the state's statute of limitations.

Mr. McNeil believes his petition is timely for two reasons: Washington's statute of limitations does not apply to a judgment that is not valid on its face, RCW 10.73.090; or if there is a "significant change in the law ... which is material to the sentence" and a court "determines that sufficient reasons exist to require retroactive application of the changed legal standard." RCW 10.73.100(6). It is possible, however, that the Washington Supreme Court will disagree and find the PRP untimely.

The *Pace* Court recognized the potential unfairness of a petitioner attempting in good faith to exhaust his federal claim only to find out years later that his petition was not properly filed, and therefore that his federal petition is untimely. *Pace*, 544 U.S. at 416.

> A prisoner seeking state postconviction relief might avoid this predicament, however, by filing a "protective" petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted. *See Rhines v. Weber, ante,* 544 U.S., at 278, 125 S. Ct. 1528, 1531, 161 L. Ed. 2d 440 (2005). A petitioner's reasonable confusion about

MOTION TO STAY AND ABATE - 5

LENELL NUSSBAUM
ATTORNEY AT LAW
2003 WESTERN AVENUE, SUITE 330
SEATTLE, WASHINGTON 98121
(206) 728-0996

whether a state filing would be timely will
ordinarily constitute "good cause" for him to file
in federal court. *Ibid*. ("[I]f the petitioner had
good cause for his failure to exhaust, his
unexhausted claims are potentially meritorious, and
there is no indication that the petitioner engaged
in intentionally dilatory tactics," then the
district court likely "should stay, rather than
dismiss, the mixed petition").

*I.d* at 416-17.

Mr. McNeil therefore has filed a protective petition in
this Court within one year of the date *Miller* was decided. He
has good cause to pursue the "stay and abey" procedure because
of the uncertainty that his state-court petition will toll the
federal statute of limitations.

B.    *MILLER* APPLIES RETROACTIVELY.

    1.    <u>*Miller* Places the Imposition of a Mandatory
Sentence of LWOP on a Juvenile Beyond the Power
of the Courts.</u>

Under *Teague v. Lane*, 489 U.S. 288 (1989), a new rule will
apply retroactively if it "places certain kinds of primary,
private individual conduct beyond the power of the criminal
law-making authority to proscribe." *Id*. at 311 (citation and
internal question marks omitted). This exception applies "not
only [to] rules forbidding criminal punishment of certain
primary conduct but also rules prohibiting a certain category
of punishment for a class of defendants because of their status
or offense." *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989),
*abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304

LENELL NUSSBAUM
ATTORNEY AT LAW
2003 WESTERN AVENUE, SUITE 330
SEATTLE, WASHINGTON 98121
(206) 728-0996

(2002).  An example of such a case is *Graham v. Florida*, --U.S. --, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), which held that the Eighth Amendment precludes a sentence of life without parole for a juvenile who did not commit a homicide offense. *See, e.g., In re Sparks*, 657 F.3d 258 (5th Cir. 2011) (holding that *Graham* applies retroactively under the first *Teague* exception).  Court rulings subject to this exception are sometimes referred to as "substantive."  *See Saffle v. Parks*, 494 U.S. 484, 494-95, *reh'g denied*, 495 U.S. 924 (1990).

The first *Teague* exception should apply here because *Miller* prohibit[s] a certain category of punishment for a class of defendants because of their status or offense."  Mandatory LWOP is absolutely precluded for defendants who were under 18 at the time of the offense.  *Miller* is therefore similar to *Graham v. Florida*.

In *Illinois v. Morfin*, 2012 IL App. (1st) 103568, --N.E.2d -- (2012), the intermediate appellate court found *Miller* to be retroactive under the first *Teague* exception.[3]

> [W]e find that *Miller* constitutes a new substantive rule.  While it does not forbid a sentence of life imprisonment without parole for a minor, it does require Illinois courts to hold a sentencing hearing for every minor convicted of first degree murder at

---

[3]    As discussed below, another division of the same court found *Miller* to be retroactive under the second *Teague* exception.  Although the two Illinois opinions rely on different exceptions to the *Teague* rule, neither expressly rejects the analysis of the other.

LENELL NUSSBAUM
ATTORNEY AT LAW
2003 WESTERN AVENUE, SUITE 330
SEATTLE, WASHINGTON 98121
(206) 728-0996

> which a sentence other than natural life
> imprisonment must be available for consideration.
> *Miller* mandates a sentencing range broader than that
> provided by statute for minors convicted of first
> degree murder who could otherwise receive only
> natural life imprisonment.

*Id.* at para. 56. In a concurring opinion, Judge Sterba further

noted that *Miller* is substantive because it "forbids a

*mandatory* sentence of life imprisonment for juveniles." *Id.* at

para. 65 (emphasis in original). Both of these points, of

course, apply equally to Washington's sentencing scheme.

The U.S. District Court for the Eastern District of

Michigan reached the same conclusion.

> Moreover, this court would find *Miller* retroactive
> on collateral review, because it is a new
> substantive rule, which "generally apply
> retroactively." *Schriro v. Summerlin*, 542 U.S. 348,
> 351-52 (2004). "A rule is substantive rather than
> procedural if it alters the range of conduct or the
> class of persons that the law punishes." *Id.* at
> 353. "Such rules apply retroactively because they
> 'necessarily carry a significant risk that a
> defendant ... faces punishment that the law cannot
> impose upon him.'" *Id.* at 352. *Miller* alters the
> class of persons (juveniles) who can receive a
> category of punishment (mandatory life without
> parole).

*Hill v. Snyder*, 2013 WL 364198 at 3 n.2 (E.D. Mich. 2013). *But*

*see Michigan v. Carp*, 2012 WL 5846553 at p. 14,[4] -- N.W.2d --

(2012) (*Miller* not substantive because it does not

categorically bar LWOP for juveniles).

---

[4] Westlaw does not provide any paragraph or star
numbering for this case. The pinpoint citations here refer to
the page number when the case is printed out from Westlaw.

1

2      This Court should follow the persuasive reasoning of the

3  *Morfin* and *Hill* opinions.

4          2.   If *Miller* is Considered a "Procedural"
               Ruling, Then as a Watershed Rule It Should
5              Be Applied Retroactively.

6      The second *Teague* exception applies to "watershed" rules

7  of constitutional criminal procedure.   *Teague*, 489 U.S. at 311.

8          [I]n some situations it might be that time and
          growth in social capacity, as well as judicial
9          perceptions of what we can rightly demand of the
          adjudicatory process, will properly alter our
10         understanding of the *bedrock procedural elements*
          that must be found to vitiate the fairness of a
11         particular conviction.

12  *Id.* (Court's emphasis) (quoting *Mackey v. United States*, 401

13  U.S. 667, 693-94 (1971)).   The Court continued:

14         In *Desist*,[5] Justice Harlan had reasoned that one of
          the two principal functions of habeas corpus was "to
15         assure that no man has been incarcerated under a
          procedure which creates an impermissibly large risk
16         that the innocent will be convicted," and concluded
          "from this that all 'new' constitutional rules which
17         significantly improve the pre-existing fact-finding
          procedures are to be retroactively applied on
18         habeas."

19  *Id.* at 312.   The Court believed it "desirable to combine the

20  accuracy element" from *Desist* with the "*Mackey* requirement that

21  the procedure at issue must implicate the fundamental fairness

22  of the trial."  *Id.*  In doing so the Court reconciled "concerns

23  about the difficulty in identifying both the existence and the

24

25  _____

       [5]     *Desist v. United States*, 394 U.S. 244, *reh'g denied*,
26  395 U.S. 931 (1969).

MOTION TO STAY AND ABATE - 9

LENELL NUSSBAUM
ATTORNEY AT LAW
2003 WESTERN AVENUE, SUITE 330
SEATTLE, WASHINGTON 98121
(206) 728-0996

1

2
value of accuracy-enhancing procedural rules ... by limiting

3
the scope of the second exception to those new procedures

4
without which the likelihood of an accurate conviction is

5
seriously diminished." *Id.* at 313.

6
    Although the language in *Teague* focuses on convictions,

7
the Supreme Court has applied the "watershed" standard to

8
procedures concerning sentencing. *See, e.g., Schriro v.*

9
*Summerlin*, 542 U.S. 348, 355-57 (2004).

10
    The U.S. Supreme Court has yet to hold that any case meets

11
the "watershed" exception. One reason for this, however, is

12
that the most fundamental rules of constitutional criminal

13
procedure were announced, and had already been applied

14
retroactively, prior to *Teague*. For example, in *In re Winship*,

15
397 U.S. 358 (1970), the Court first held that the due process

16
clause requires proof beyond a reasonable doubt in criminal and

17
juvenile delinquency proceedings. In *Ivan V. v. City of New*

18
*York*, 407 U.S. 203 (1972), the Court held that *Winship* applied

19
retroactively, using language nearly identical to the *Teague*

20
standard. *Id.* at 204-05 (a lower standard "substantially

21
impairs the truth-finding function" while the beyond-a-

22
reasonable-doubt standard supports "that bedrock axiomatic and

23
elementary principle whose enforcement lies at the foundation

24
of the administration of our criminal law") (citations and

25
internal quotation marks omitted).

26

MOTION TO STAY AND ABATE - 10

LENELL NUSSBAUM
ATTORNEY AT LAW
2003 WESTERN AVENUE, SUITE 330
SEATTLE, WASHINGTON 98121
(206) 728-0996

Similarly, the fundamental right to confront a co-defendant's statement incriminating the defendant, set out in *Bruton v. United States*, 391 U.S. 123 (1968), was applied retroactively in *Roberts v. Russell*, 392 U.S. 293, *reh'g denied*, 393 U.S. 899 (1968). The *Russell* Court found that *Bruton* "correct[ed] serious flaws in the fact-finding process at trial," and "'went to the basis of fair hearing and trial because the procedural apparatus never assured the (petitioner) a fair determination' of his guilt or innocence." *Id.* at 294 (citations and internal quotation marks omitted). This language suggests that *Bruton* would have passed the *Teague* test as well.

On the other hand, *Crawford v. Washington*, 541 U.S. 36 (2004), was not retroactive under *Teague*. While *Crawford* changed the constitutional standard for admission of hearsay statements, it did not greatly increase the likelihood of an accurate conviction because the previous standard required "adequate indicia of reliability." *See In re Markel*, 154 Wn.2d 262, 273, 111 P.3d 249, 254 (2005).[6]

The closest analog to *Miller* is the Supreme Court's ruling in *Woodson v. North Carolina*, 428 U.S. 280 (1976), a case the

---

[6]    In fact, *Crawford* arguably decreased the accuracy of trials because it expressly rejected reliability as a factor for determining which out-of-court statements may be admitted at trial. *Crawford*, 541 U.S. at 61.

MOTION TO STAY AND ABATE - 11

LENELL NUSSBAUM
ATTORNEY AT LAW
2003 WESTERN AVENUE, SUITE 330
SEATTLE, WASHINGTON 98121
(206) 728-0996

1
2   *Miller* Court relied on.[7]   *Woodson* overturned a statute
3   mandating the death penalty for any conviction of first-degree
4   murder.  *Id.* at 305.  This rule was promptly applied to all 120
5   prisoners on death row in North Carolina, regardless of the
6   procedural posture of their cases.  *See* Cynthia F. Adcock, *The*
7   *Twenty-Fifth Anniversary of Post-Furman Executions in North*
8   *Carolina: A History of One Southern State's Evolving Standards*
9   *of Decency*, 1 ELON L. REV. 113, 119 (2009).[8]  Similarly, *Sumner*
10  *v. Shuman*, 483 U.S. 66 (1987), struck down mandatory death
11  sentences for defendants who commit murder while under sentence
12  of LWOP.  *See Miller*, 132 S. Ct. at 2467.  It likewise was
13  applied retroactively.[9]   It does not appear that either
14  *Woodson* or *Shuman* was ever expressly tested under the *Teague*
15  standards.
16       *Miller*, like *Woodson*, is different from cases such as
17

18  _____

         [7]    *See Miller*, 132 S. Ct. at 2464.
19
         [8]    Available    at    http://www.elon.edu/docs/e-
20  web/law/law_review/Issues/Adcock.pdf.

21       [9]    *See Campbell v. Blodgett*, 978 F.2d 1502, 1512-13
    (9th Cir.), *reh'g granted*, 978 F.2d 1519 (9th Cir. 1992),
22  *reconsideration denied*, 992 F.2d 984 (9th Cir. 1993
    (determining merits of *Shuman* claim in case that became final
23  two years before *Shuman* was decided); *Thigpen v. Thigpen*, 926
    F.2d 1003, 1005 (11th Cir.), *reh'g denied*, 933 F.2d 1023 (11th
24  Cir. 1991) (noting death sentence set aside on *Shuman* grounds
    in federal habeas corpus case); *McDougall v. Dixon*, 921 F.2d
25  518, 530-31 (4th Cir. 1990), *cert. denied*, 501 U.S. 1223 (1991)
    (determining merits of *Shuman* claim in case that became final
26  four years before *Shuman* decided).

MOTION TO STAY AND ABATE - 12

LENELL NUSSBAUM
ATTORNEY AT LAW
2003 WESTERN AVENUE, SUITE 330
SEATTLE, WASHINGTON 98121
(206) 728-0996

1

2
*Crawford* because it does not merely make an incremental
3
improvement to the accuracy of a proceeding.  Rather, it
4
completely abolishes a mandatory sentencing scheme.  No such
5
ruling has ever been tested under *Teague*.  This Court should
6
find that the *Miller* ruling meets *Teague*'s second exception.
7
    First, *Miller* alters the "bedrock procedural elements" of
8
sentencing juveniles for aggravated murder.  The current
9
Washington system contains *no* procedural safeguards since a
10
sentence of LWOP is automatic upon conviction for aggravated
11
murder.    *Miller* replaces that with a system requiring
12
consideration of complex and individualized factors.
13
    Second, the current system allows an "impermissibly large
14
risk" that a juvenile will be sentenced to LWOP, and the new
15
rule "significantly improve[s] the pre-existing fact-finding
16
procedures."  *Teague*, 489 U.S. at 312.  As the *Miller* Court
17
noted, "appropriate occasions for sentencing juveniles to this
18
harshest possible penalty will be uncommon."  132 S. Ct. at
19
2469.  Thus in Washington, *Miller* changes the likelihood of a
20
juvenile convicted of aggravated murder receiving LWOP from
21
100% to nearly 0%.  In other words, the *Miller* Court found that
22
the current system suffers not merely from the *possibility* of
23
erroneous sentences in some cases but the near certainty of
24
erroneous sentences in the vast majority of cases.  In the
25
words of the *Teague* Court, "the likelihood of an accurate
26

MOTION TO STAY AND ABATE - 13

1
2
3    [sentence]" was "seriously diminished," 489 U.S. at 313, under
     the sentencing scheme applied to Mr. McNeil.
4
5        Finally, the *Miller* ruling affects the "fundamental
     fairness" of the proceeding.  As the Court noted, the very
6
     "hallmark features" of youth -- among them, immaturity,
7
     impetuosity, failure to appreciate risks and consequences,
8
     familial and peer pressures -- "put them at a significant
9
     disadvantage in criminal proceedings." *Miller*, 132 S. Ct. at
10
     2468.  These feature may contribute to an inability to deal
11
     with police officers or prosecutors (including on a plea
12
     agreement) or even to assist his own attorneys, ultimately
13
     leading to greater charges than an adult might have faced.  *Id.*
14
     Thus this Court should find that the "watershed" exception
15
     applies here.
16
         In *Illinois v. Williams*, 2012 IL App (1st) 111145, --
17
     N.E.2d -- (2012), the Court found the watershed exception
18
     applied to *Miller*.  "*Miller* should be retroactively applied in
19
     this case because it is a rule that 'requires the observance of
20
     those procedures that are implicit in the concept of ordered
21
     liberty.'"  *Id.* at ¶ 52 (quoting *Teague*, 489 U.S. at 311).
22
     Further, the Court found that *Miller* required a new procedure
23
     "without which the likelihood of an accurate conviction is
24
     seriously diminished." *Id.* at ¶ 53 (quoting *Teague*, 489 U.S.
25
     at 313).
26

LENELL NUSSBAUM
ATTORNEY AT LAW
2003 WESTERN AVENUE, SUITE 330
SEATTLE, WASHINGTON 98121
(206) 728-0996

1

2      *Michigan v. Carp* rejects the second *Teague* exception, but

3  its reasoning is flawed.[10]    The court believed that the

4  exception can apply only to procedures that affect the

5  conviction rather than the sentence.    *Id.*, 2012 WL 5846553 at

6  p. 14-15.    The United States Supreme Court disagrees.

7          The second exception is for "watershed rules of
           criminal procedure" implicating the fundamental
8          fairness and accuracy of the criminal *proceeding*.
           See *Teague, supra*, 489 U.S., at 311, 109 S. Ct., at
9          1076 (plurality opinion).

10  *Saffle v. Parks*, 494 U.S. 484, 495, *reh'g denied*, 495 U.S. 924

11  (1990) (emphasis added).    In *Saffle*, the Supreme Court

12  considered whether the petitioner could rely on a new rule that

13  a capital sentencing jury must be permitted to consider

14  sympathy for the defendant.    *Id.* at 485-86.    The Court found

15  the second *Teague* exception relevant to that inquiry and

16  expressly addressed it, even though the new rule had nothing to

17  do with the defendant's conviction.    *Id.* at 495.    The Court

18  found that the exception was not satisfied, however, because

19  "[t]he objectives of fairness and accuracy are more likely to

20  be threatened than promoted" by consideration of sympathy."

21  _____

22      10    A Florida intermediate appellate court also has
    rejected retroactive application of *Miller*. *Geter v. Florida*,
23  2012 WL 4448860, -- So.3d -- (2012).    Its analysis is not
    helpful, however, because Florida's unique retroactivity
24  standards bear little relation to *Teague*.    See *Illinois v.
    Williams* at ¶ 55 ("Although we disagree with the result of
25  *Geter* in that it held that *Miller* did not apply retroactively,
    it also used a different standard of analysis than that found
26  in *Teague*").

MOTION TO STAY AND ABATE - 15

LENELL NUSSBAUM
ATTORNEY AT LAW
2003 WESTERN AVENUE, SUITE 330
SEATTLE, WASHINGTON 98121
(206) 728-0996

*Id.*

Similarly, in *Schriro v. Summerlin*, *supra*, the Supreme Court considered the new rule that juries rather than judges must decide whether a defendant is eligible for the death penalty. 542 U.S. at 349. The Court addressed the "watershed" standard, finding that it was not satisfied because jury findings were not necessarily more fair or accurate than judge findings.

3.    The United States Supreme Court Has Applied *Miller* As Retroactively.

The *Miller* Court granted relief not only to Evan Miller but also to Kuntrell Jackson, the petitioner in a consolidated case. *Miller*, 132 S. Ct. at 2475. Jackson's conviction had become final in 2004, *Jackson v. State*, 359 Ark. 87, 194 S.W.2d 757 (Ark. 2004), and his case reached the Supreme Court after the Arkansas Supreme Court affirmed the dismissal of his state petition for habeas corpus. *Jackson v. Norris*, 2011 Ark. 49 (Ark. 2011), *cert. granted sub nom. Jackson v. Hobbs*, 132 S. Ct. 538, 181 L. Ed. 2d 395 (2011). The Supreme Court will not apply a new rule to a case on collateral review unless that rule applies retroactively to all cases on collateral review. *See Penry v. Lynaugh*, 492 U.S. 302, 313 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002).

At least three court have found the resolution of Jackson's case to support their conclusion that *Miller* applies

MOTION TO STAY AND ABATE - 16

retroactively.   *See Morfin* at ¶ 57; *Williams* at ¶ 54; *Hill* at 3 n.2.

      For the same reason, this Court should find *Miller* to be retroactive.[11]

## CONCLUSION

      This Court should enter an order staying and abating Mr. McNeil's 2254 petition pending the resolution in state court of his pending personal restraint petition.

      DATED this 25th day of June, 2013.

                              Respectfully submitted,


                              /s/  Lenell Nussbaum
                              LENELL NUSSBAUM, WSBA No. 11140
                              Attorney for Mr. McNeil
                              nussbaum@seanet.com

---

      [11]   *But see Chambers v. State*, 831 N.W.2d 311 (Minn. 2013).

MOTION TO STAY AND ABATE - 17

LENELL NUSSBAUM
ATTORNEY AT LAW
2003 WESTERN AVENUE, SUITE 330
SEATTLE, WASHINGTON 98121
(206) 728-0996

1

2
## CERTIFICATE OF SERVICE

3
    I, LENELL NUSSBAUM, hereby certify that on June 25, 2013,

4
I caused the foregoing document to be filed with the United

5
States District Court's Electronic Case Filing (CM/ECF) system,

6
which will serve one copy of the foregoing document by email on

7
opposing counsel.

8
    I further certify that on June 25, 2013, I caused a copy

9
of the foregoing document to be served in paper format on Mr.

10
Russell Duane McNeil, 957470, 11919 W. Sprague Ave., P.O. Box

11
1899, Airway Heights, WA  99011, and a courtesy copy on the

12
Washington Attorney General's Office, Corrections Division,

13
P.O. Box 40116, Olympia, WA  98504-0116, by depositing the same

14
in the United States Postal Service, postage prepaid.

15

16
                        /s/  Lenell Nussbaum
17
                        LENELL NUSSBAUM, WSBA No. 11140
                        Attorney for Mr. McNeil
18
                        nussbaum@seanet.com

19

20

21

22

23

24

25

26

MOTION TO STAY AND ABATE - 18

1

2

3

4

5

6                UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF WASHINGTON COUNTY

7   RUSSELL DUANE McNEIL,                  )
                                           )
8                      Petitioner,         )   NO.  13-CV-3065-CI
                                           )
9            vs.                           )   [PROPOSED]  ORDER
                                           )   STAYING AND ABATING
10  MAGGIE MILLER-STOUT,                    )
                                           )
11                     Respondent.         )
                                           )
12  _____  )

13

14       THIS MATTER having come before the undersigned judge upon

15  the Petitioner's motion to "stay and abate" the pending § 2254

16  petition, and the Court having considered the motion, the file,

17  and the position of the parties, now, therefore,

18       IT IS ORDERED that, because Petitioner has good cause for

19  his failure to exhaust the Eighth Amendment claims under *Miller*

20  *v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455, 183 L. Ed. 2d 407

21  (2012), now pending in the Washington State Supreme Court, No.

22  87654-1, because this unexhausted claim is potentially

23  meritorious, and because there is no indication that Petitioner

24  has engaged in dilatory litigation tactics, under *Rhines v.*

25  *Weber*, 544 U.S. 269 (2005), the instant petition for relief

26  under 28 U.S.C. § 2254 is stayed and abated until 45 days after

ORDER STAYING PETITION - 1            LENELL NUSSBAUM
                                           ATTORNEY AT LAW
                                      2003 WESTERN AVENUE, SUITE 330
                                        SEATTLE, WASHINGTON 98121
                                            (206) 728-0996

the final resolution by the Washington State Supreme Court of
the *Miller* claims.

      DONE IN OPEN COURT this ___ day of _____, 2013.


_____
JUDGE

Presented by:


/s/  Lenell Nussbaum
LENELL NUSSBAUM, WSBA No. 11140
Attorney for Mr. McNeil
nussbaum@seanet.com

LENELL NUSSBAUM
ATTORNEY AT LAW
2003 WESTERN AVENUE, SUITE 330
SEATTLE, WASHINGTON 98121
(206) 728-0996